# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SUNLIGHT SAUNAS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | Case No. 04-2597 |
| SUNDANCE SAUNA, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Sunlight Saunas, Inc. ("Sunlight") brings suit against Sundance Sauna, Inc. ("Sundance"), Brighton Sauna, Inc., Cobalt Multimedia, Inc. ("Cobalt") and Preston Hall, alleging tortious interference with contract, tortious interference with prospective business relationship, common law trademark infringement, false advertising, false description, cybersquatting, injury to business reputation, unfair competition, business defamation, civil conspiracy, antitrust activity and other tortious or deceptive trade practices arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, the Sherman Act, 15 U.S.C. §§ 1 *et seq.*, and the state laws of California and Kansas. This matter comes before the Court on <u>Cobalt Multimedia Inc.'s And Preston Hall's Motion To Dismiss Third Amended Complaint</u> (Doc. #169) filed December 14, 2005. In this motion, defendants Cobalt and Hall challenge the exercise of personal jurisdiction. For reasons set forth below, the Court finds that defendants' motion should be sustained.

## Legal Standards

The standard which governs a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., is well established. Plaintiff bears the burden of establishing personal jurisdiction over

defendants. Before trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by defendants' affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in plaintiff's favor, and plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984), cert. denied, 471 U.S. 1010 (1985); see also Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1130-31 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988).

## Factual Background

Plaintiff's third amended complaint alleges the following facts:

Sunlight is a Missouri corporation with its principal place of business in Lenexa, Kansas. Sunlight sells personal saunas in the Kansas-Missouri area and throughout the United States. Sunlight has conducted business under the trade name "Sunlight Saunas" and its "SUNLIGHT SAUNAS" trademark.

Sundance is a California corporation with its principal place of business in San Diego, California. Brighton is a Nevada corporation with its principal place of business in Reno, Nevada. Cobalt is a Washington corporation with its principal place of business in Bellingham, Washington. Hall, an individual, resides in Bellingham, Washington.

Sundance collaborated and conspired with Brighton, Cobalt and Hall to register and authorize the registering of an Internet website at "www.sunlightsaunas-exposed.com" ("Exposed website") with a domain name of "sunlightsaunas-exposed.com." At the request of Sundance, defendants registered this domain name with Domains by Proxy, Inc. without knowledge or consent of Sunlight. Sunlight maintains its official Internet

website at "www.sunlightsaunas.com" and uses the domain name "sunlightsaunas.com."

Sundance and Brighton conspired to unfairly compete against Sunlight by pressuring suppliers and customers not to deal with Sunlight. Sundance and Brighton shared sensitive competitive information to eliminate Sunlight from competition in the personal sauna market. The Exposed website makes the following false or misleading statements: (1) Sunlight uses heaters which expose the sauna user to harmful and toxic levels of aluminum; (2) Sunlight does not use ceramic heaters; (3) Sunlight does not comply with required industry or safety standards and its products are unsafe; (4) Sunlight advertises that it manufactures its saunas; and (5) Sunlight lies and makes false claims to customers regarding the quality and characteristics of its products. Defendants provided a link to the Exposed website to customers and potential customers of Sunlight and its competitors and disseminated information which disparaged plaintiff.

Hall alleges by affidavit the following facts:

Hall is the president and sole shareholder of Cobalt. Through Cobalt, Hall provides professional Internet services, including website design, consulting, website hosting and database development. Hall does not have clients or customers in Kansas, has not transacted business in Kansas, and does not manufacture, sell or distribute sauna products. Sundance hired Cobalt as an independent contractor to develop, host and maintain its website, "http://www.sundance-sauna.com." GoDaddy.com hosted the Exposed website. The Exposed website allowed users to send e-mail to an Internet address to which Cobalt, Hall and Sundance had access, "sunlightsaunas@yahoo.com." Hall and Cobalt did not respond to or acknowledge any e-mail, however.

Cobalt does not do business in the state of Kansas, and it has no designated agent, employee or sales agent in Kansas. Cobalt does not direct advertising or marketing towards the State of Kansas.

**Procedural Background**

On May 19, 2005, plaintiff added Cobalt and Hall to this action. Second Amended Complaint (Doc. #38). On July 14, 2005, Hall attended mediation with plaintiff. Second Affidavit Of Preston Hall, Exhibit 1 to Defendants Cobalt Multimedia Inc.'s And Preston Hall's Reply To Plaintiff's Brief In Opposition To Defendants Cobalt Multimedia Inc.'s And Preston Hall's Motion To Dismiss (Doc. #196) filed January 20, 2006, ¶¶ 3-4. On August 10, 2005, Cobalt and Hall filed a motion to dismiss, asserting lack of personal jurisdiction. Attorney Leslie L. Lawson entered an appearance on defendants' behalf to argue a motion to dismiss for lack of jurisdiction. Limited Entry of Appearance (Doc. #64). On August 11, 2005, defendants served initial disclosures pursuant to Rule 26, Fed. R. Civ. P. Doc. #69.

On December 12, 2005, the Court held a pretrial conference which defendants attended. On December 21, 2005, Cobalt and Hall joined other defendants in a motion to strike damage claims stated in a proposed pretrial order. Defendants' Joint Motion (Doc. #172). On January 19, 2006, the Court entered its pretrial order. Doc. #187. Cobalt and Hall have not filed an answer to plaintiff's complaint.

**Analysis**

The Court has discretion to consider a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., based on affidavits and other written material. See Behagen, 744 F.2d at 733. If the Court so chooses, plaintiff must make only a prima facie showing of jurisdiction to avoid dismissal. See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). Of course plaintiff eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. Until such a hearing is held, a prima facie showing suffices, notwithstanding any contrary presentation by the moving party. See Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996). If defendants

challenge the jurisdictional allegations, plaintiff must support the jurisdictional allegations of the complaint by competent proof of the supporting facts. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989). All factual disputes, however, are resolved in plaintiff's favor. See id. Further, the allegations in the complaint must be taken as true to the extent that they are uncontroverted by defendants' affidavits. Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (only well-pled facts, as distinguished from conclusory allegations, accepted as true).

The Court applies a two-part test to analyze Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction over a nonresident defendant. First, defendants' conduct must fall within a provision of the Kansas long-arm statute, K.S.A. § 60-308. Kansas courts construe the long-arm statute liberally to assert personal jurisdiction over nonresident defendants to the full extent permitted by the limitations of due process. Volt Delta Res. Inc. v. Devine, 241 Kan. 775, 777, 740 P.2d 1089, 1092 (1987). Second, defendants must have sufficient minimum contacts with Kansas to satisfy the constitutional guarantee of due process. See Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (court may exercise personal jurisdiction over nonresident defendant only so long as "minimum contacts" exist between defendant and forum state).

## I. Waiver

Plaintiff first argues that defendants waived personal jurisdiction when they entered an appearance through counsel by filing motions and other documents.[1] Plaintiff specifically argues that defendants engaged

---

[1] Plaintiff specifically refers to the following filings: Cobalt Multimedia Inc.'s And Preston Hall's Motion To Dismiss Second Amended Complaint (Doc. #61), Memorandum Of Law In Support Of Defendants' Cobalt Multimedia Inc. And Preston Hall Motion To Dismiss (Doc. #62), Affidavit Of Preston Hall In Support Of Defendants' Cobalt Multimedia Inc. And Preston Hall Motion To Dismiss (Doc. #63),
(continued...)

in litigation by filing Rule 26 initial disclosures, participating in mediation, attending depositions (through counsel), participating in the parties' pretrial conference and joining in a motion to strike certain claims. Defendants respond that the only motions filed thus far involve the motion to dismiss, which does not waive personal jurisdiction. Defendants further argue that attendance at depositions while awaiting a full briefing of the motion to dismiss does not waive their right to object to jurisdiction.

Under Rule 12, Fed. R. Civ. P., a party may waive the defense of lack of personal jurisdiction through its course of conduct during litigation. See Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir. 1998); Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1296-97 (7th Cir. 1993); Yeldell v. Tutt, 913 F.2d 533, 538-39 (8th Cir. 1990) (personal jurisdiction waived when parties engaged in discovery, filed motions and participated in five-day trial). A party's continued participation in litigation may result in a finding that objections to personal jurisdiction have been waived or forfeited. See Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 62 (2d Cir. 1999).

Plaintiff relies on Continental Bank, 10 F.3d at 1293, for support of its position. In Continental Bank, the Second Circuit commented that "defendants fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction." Id. at 1297. It also noted that defendant engaged in "lengthy discovery, filed various motions and opposed a number of motions filed by the bank." Id.

In an unpublished opinion, the Tenth Circuit found that a defendant submitted to jurisdiction when it did not request a ruling on its personal jurisdiction defense. See Hunger U.S. Special Hydraulics Cylinders Corp.

---

¹(...continued)
Exhibits In Support of Motion To Dismiss (Doc. #65), Motion For Extension Of Time To File Motion To Dismiss (Doc. #66), Index Of Exhibits For Defendants' Cobalt Multimedia Inc. And Preston Hall Motion To Dismiss For Lack Of Jurisdiction (Doc. #67) and Supplemental Motion For Extension Of Time To File Motion To Dismiss (Doc. #68), all filed August 10, 2005.

v. Hardie-Tynes Mfg. Co., 203 F.3d 835, 2000 WL 147392, at *3 (10th Cir. 2000).  In Hunger, defendant's answer had objected to personal jurisdiction but the parties thereafter engaged in settlement negotiations and entered into a stipulation to dismiss all claims except cross-claims between two defendants.  More than three years passed before Hunger filed a motion to dismiss for lack of personal jurisdiction.  The Tenth Circuit held that because Hunger had actively participated in the litigation, it had submitted to the court's jurisdiction.  Id.

The Court easily distinguishes the current case from both Continental Bank and Hunger.  Here, defendants filed their first motion to dismiss less than two months after plaintiff joined them as parties.  Prior to filing the motion, defendants limited their participation in litigation to attending mediation.  While awaiting a full briefing and a court ruling on the motion to dismiss, defendants served initial disclosures, attended a pretrial conference and joined in a motion to strike.  Unlike defendants in Continental Bank and Hunger, defendants here did not pass up opportunities to raise the defense.  See, e.g., Hamilton, 197 F.3d at 61-62 (jurisdictional challenge forfeited when party waited four years to file motion to dismiss but could have raised defense at four separate times during litigation).  Defendants have not actively participated in litigation to such an extent that they have waived their right to challenge personal jurisdiction.  See Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc., 104 F.App'x 376 (5th Cir. 2004) (party did not waive objection to personal jurisdiction by providing initial disclosures, filing motion to strike jury demand and some discovery, but not filing counterclaims or seeking adjudication on merits; seven months passed between answer and motion to dismiss).

**II.    The Kansas Long-Arm Statute**

Plaintiff asserts that personal jurisdiction is proper under K.S.A. § 60-308(b)(1), (2), (5) and (7).  Defendants argue that this Court has no authority to exercise personal jurisdiction under the Kansas long-arm statute, K.S.A. § 60-308(b).  That statute provides in part as follows:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
> (1) Transaction of any business within this state;
> (2) commission of a tortious act within this state; . . .
> * * *
> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;
> * * *
> (7) causing to persons or property within this state any injury arising out of an act or omission outside of this state by the defendant if, at the time of the injury either (A) the defendant was engaged in solicitation or service activities within this state; or (B) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use[.]

The parties agree that the Court's analysis of jurisdiction under the Kansas long-arm statute collapses into an analysis of due process, OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1090 (10th Cir. 1998) (Kansas long-arm statute allows jurisdiction to full extent permitted by due process), and they present their arguments within this context.

### III.    Due Process

The Court must determine whether exercise of jurisdiction satisfies constitutional due process requirements. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Due process requires "minimum contacts" between the nonresident defendant and the forum state. Id. This standard may be satisfied in one of two ways. First, specific jurisdiction exists over a matter in the forum state if defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1534 (10th Cir. 1996) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Second, general jurisdiction exists if "defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over

the defendant, even if the suit is unrelated to the defendant's contacts with the state." Trierweiler, 90 F.3d at 1533 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n.9 (1984)). In either case, defendant must reasonably be able to anticipate being haled into court in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Also, jurisdiction in the particular case must be reasonable so as not to offend traditional notions of fair play and substantial justice. See World-Wide Volkswagen, 444 U.S. at 292.

### A. General Jurisdiction

Plaintiff argues that Cobalt has engaged in continuous and systematic contacts with Kansas through its website at www.cobaltmultimedia.com. Plaintiff contends that Cobalt has transacted business and entered into agreements with Kansas residents through an interactive website since at least 1998. Plaintiff argues that the Cobalt website invites users to submit a request for project review, solicits employees from Kansas and provides telephone numbers, price lists and an order link. Defendants argue that Cobalt does not have any clients or customers in Kansas, and that neither Cobalt or Hall have conducted business within the State of Kansas.

In Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997), a district court set forth a sliding-scale framework for analyzing whether jurisdiction is proper based on a defendant's website. In Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1296-97 (10th Cir. 1999), the Tenth Circuit applied the Zippo framework to analyze general personal jurisdiction. Specifically, it held as follows:

> First, personal jurisdiction is established when "a defendant clearly does business over the Internet," such as entering into contracts which require the "knowing and repeated transmission of computer files over the Internet." Second, exercising personal jurisdiction is not appropriate when the Internet use involves "[a] passive Web site that does little more than make

9

information available to those who are interested in it." Under these circumstances, "a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." Third, a middle category encompasses "interactive Web sites where a user can exchange information with the host computer."

Id. at 1296 (quoting Zippo Mfg. Co., 952 F. Supp. at 1123-24). For websites which fall in the middle category, jurisdiction depends on "the level of interactivity and commercial nature of the exchange of information that occurs on the [website]." Zippo, 952 F. Supp. 1124.

Here, Cobalt's website is undoubtedly interactive, and it conducts business over the Internet. Plaintiff looks to Ticket Solutions, Inc. v. Banks, No. CIV.A.01-2522-CM, 2002 WL 989462, at *3 (D. Kan. May 6, 2002), to support its claim that personal jurisdiction is proper where a defendant conducts business over the Internet. In Ticket Solutions, the Court noted that defendant offered ticketing services which "could be and were accessed by Kansas residents," id., and that more importantly, defendant contacted plaintiff by e-mail and offered to sell a domain name.

Many courts have recognized that "to hold that the mere existence of an internet website establishes general jurisdiction would render any individual or entity that created such a website subject to personal jurisdiction in every state. Such a rule 'would eviscerate the personal jurisdiction requirement as it currently exists.'" Dagesse v. Plant Hotel N.V., 113 F. Supp.2d 211, 221 (D. N.H. 2000). An interactive website will subject a defendant to general personal jurisdiction if defendant has "actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." Smith v. Basin Park Hotel, Inc., 178 F. Supp.2d 1225, 1235 (N.D. Okla. 2001) (citing Dagesse, 113 F. Supp.2d at 222-23).

Plaintiff argues that it strains credulity for Cobalt to contend that it has not had a single Internet-based communication with a Kansas resident. Yet plaintiff has not shown a single, actual, deliberate contact with

10

Kansas, much less met the more stringent requirement of systematic and continuous contacts. Plaintiff has offered no evidence that any Kansas resident has (1) has accessed the website; (2) contacted Cobalt or Hall through the website; (3) sought or purchased services from Cobalt or Hall; or (4) applied for employment through the website. Hall has denied ever communicating with any Kansas resident through or as a result of the website. Plaintiff has not established a prima facie case of general personal jurisdiction.[2] See 2000 Int'l Ltd. v. Chambers, No. 99-2123-JTM, 2000 WL 1801835, at *5 (D. Kan. Nov. 6, 2000).

### B. Specific Jurisdiction

Kansas may assert specific jurisdiction over out-of-state defendants if they have "purposefully directed . . . activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King, 471 U.S. at 472. The Tenth Circuit applies a three-part test to determine specific jurisdiction:

> (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp.2d 1074, 1078 (D. Kan. 1998); Dazey Corp. v. Wolfman, 948 F. Supp. 969, 974 (D. Kan. 1996).

The Court first analyzes whether defendants "purposefully directed" activities toward Kansas and

---

[2] In its response, plaintiff asks that the Court allow it to conduct jurisdictional discovery. The proper format for such request is through a motion under D. Kan. Rule 7.1. See World Wide Assoc. of Specialty Programs & Schs. v. Houlahan, 138 Fed. App'x 50 (10th Cir. 2005) (district court did not abuse its discretion by denying request for limited discovery when plaintiff made general request in response to motion to dismiss). In addition, plaintiff joined Cobalt and Hall in May of 2005. It has had full opportunity to conduct relevant discovery in the last ten months, and presumably it conducted a thorough investigation into the question of personal jurisdiction before it elected to join Cobalt and Hall as defendants in the first instance.

whether litigation results from injuries which arise out of or relate to those activities. See Kuenzle, 102 F.3d at 456. Plaintiff points to three instances where defendants purposefully directed activities toward Kansas: (1) defendants included the word "Kansas" in the Keyterms section of the www.cobaltmultimedia.com website; (2) defendants created a disparaging and infringing website to injure a Kansas-based business; (3) defendants voluntarily continued, modified and reestablished the disparaging website after receiving notice that plaintiff considered the website defamatory and infringing on its trademark and trade name.

### 1. Cobalt Website

Defendants argue that www.cobaltmultimedia.com cannot be used to establish specific personal jurisdiction because the website has no connection to plaintiff's claims. The Court agrees. The Court has already found that Cobalt's website does not suffice to confer general jurisdiction. Plaintiff points to no case law which supports its argument that including the forum state in the website key terms is sufficient to constitute purposefully directing activities toward the forum state, and this Court's research has not uncovered such precedent. Furthermore, maintaining a website unrelated to plaintiff's claims does not give the Court specific jurisdiction.

### 2. Exposed Website

Plaintiff argues that Cobalt has submitted to the jurisdiction of this Court by developing, purchasing and registering the Exposed website which has disparaged and injured it. Specifically, plaintiff argues that (1) the website is not passive; (2) Sundance could contact individuals who sent e-mail to the website; (3) the website provided plaintiff's main competitors a pool of potential customers who were predisposed against purchasing from plaintiff; (4) the website implicitly encouraged users to purchase saunas from businesses other than plaintiff; and (5) defendants' tortious acts are evidenced by the website itself.

Defendants disagree, arguing that under the Zippo sliding scale test, the website is either passive or falls in middle ground. Defendants also contend that the website is not commercial in nature.

In Rainy Day Books, Inc. v. Rainy Day Books & Café, L.L.C., 186 F. Supp.2d 1158 (D. Kan. 2002), the district court found defendant subject to personal jurisdiction because it operated an interactive website which permitted users to purchase books. In Purco Fleet Srvs., Inc. v. Towers, 38 F. Supp.2d 1320 (D. Utah 1999), defendants registered a domain name which incorporated the name of a Utah competitor. The district court found that defendants transacted business in the state which subjected them to personal jurisdiction. Specifically, defendants used a website to solicit business from a Utah resident and attempted to obtain a cash settlement for relinquishment of the domain name. Id. at 1324.

Here, the Exposed website permitted users to send questions or comments through an e-mail "hot link" but it was otherwise not interactive. Because the website permitted users to contact the host computer, the Court concludes that it occupies the middle ground in the Zippo categories. See Payless Shoesource, Inc., v. Genfoot Inc., No. 02-4160-JAR, 2004 WL 2182184, at * 3 (D. Kan. Sept. 21, 2004). The Court must then examine the level and commercial nature of the interactivity which occurred through the website. 2000 Int'l Ltd., 2000 WL 1801835, at *5.

The Exposed website discussed plaintiff's claims about its sauna products and did not relate at all to defendants' actual business – website hosting and database development. Although it included links to other sauna businesses, the website offered no products for sale. The Court concludes that defendants did not conduct business on the Internet through this website, and that the site was more "informational" than commercial in nature. The existence of the Exposed website does not by itself subject defendants to personal jurisdiction.

13

### 3. Tortious Activity

Mere allegations that an out-of-state defendant has committed intentional torts "does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1079 (1995). The Court must make a particularized inquiry as to the extent to which defendants purposefully availed themselves of the benefits of the laws of Kansas. Id. The Court examines contacts by the defendants in committing the alleged tort. Id. at 1079-80.

In Calder v. Jones, 465 U.S. 783 (1984), actress Shirley Jones brought suit against a writer and an editor, alleging libel, invasion of privacy and intentional infliction of emotional harm based on an article published in the *National Enquirer*. Plaintiff resided in California, and defendants resided in Florida. The Supreme Court set out an "effects test" which provided that the exercise of personal jurisdiction over a nonresident does not violate due process when (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum state, such that the forum state was the focal point of the tortious activity; and (3) defendant expressly aimed the tortious conduct at the forum, such that the forum state was the focal point of the tortious activity. Id. at 788-790. In Calder, the Supreme Court ultimately found that defendants drew the article from California sources, that they knew the defamatory article would have an impact on plaintiff, that the brunt of the injury would be suffered where plaintiff lived and that the newspaper had its largest circulation in California.

The Tenth Circuit examined Calder and its progeny in Far West Capital and concluded that although plaintiff suffered financial effects of torts in Utah (the forum state), defendant did not have minimum contacts when the focal point of the tort was elsewhere. Specifically, the Tenth Circuit concluded that defendant did not expressly aim its actions at the forum state when contract negotiations took place in Nevada and the contract expressly provided that Nevada law governed. The Tenth Circuit stated, "[i]n short, there is no

14

indication that Utah had anything but a fortuitous role in the parties' past dealing or would have any role in their continuing relationship." Far W. Capital, Inc., 46 F.3d at 1080.

Other circuits have also examined the Calder effects test. The Third Circuit noted that Calder does not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998). In IMO Industries, the Third Circuit expressly declined to find that a plaintiff may sue an alleged tortfeasor in the state in which a tort victim suffers injury. Id. at 263. The Third Circuit concluded as follows:

> [T]he Calder "effects test" can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity. Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement. The defendant must "manifest behavior intentionally targeted at and focused on" the forum for Calder to be satisfied. In the typical case, this will require some type of "entry" into the forum state by the defendant.

Id. at 265 (citations omitted) (emphasis in original). The Third Circuit further stated that plaintiff must show that defendants knew that plaintiff would suffer the brunt of the harm in the forum, and point to specific activity indicating that defendants expressly aimed its tortious conduct at the forum. Id. at 266.

While a general posting to an Internet website is not sufficient to establish minimum contacts, courts may find personal jurisdiction appropriate where there is "something more" to indicate that defendant purposefully directed activities to the forum state. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997) (creating website may be felt nationwide or worldwide but does not constitute purposefully directing activities toward forum state); Barrett v. Catacombs Press, 44 F. Supp.2d 717, 727 (E.D. Pa. 1999) (website with defamatory remarks does not by itself mean defendant possessed intent to target forum state residents).

In Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002), the Fifth Circuit examined whether a court could

exercise personal jurisdiction over a defendant who wrote an allegedly defamatory article which later appeared on a Columbia University website. The Fifth Circuit agreed the district court could not exercise personal jurisdiction because the article did not refer to Texas or the activities of the individual defendant in Texas, defendant did not direct the article to Texas readers as distinguished from other readers, and Texas was not the focal point of the article. Id. at 473.

In contrast, a website which deliberately and knowingly targeted North Dakota supported the exercise of specific personal jurisdiction. Atkinson v. McLaughlin, 343 F. Supp.2d 868, 878 (D. N.D. 2004). In Atkinson, defendant's website expressly stated that plaintiff received funding from donors in North Dakota and that potential donors should know more about plaintiff before committing time and money to his program. The district court concluded that these comments particularly targeted forum residents and were meant to foster debate in the forum state, especially among donors to plaintiff's program. Id. at 877.

Plaintiff relies on Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998), for the proposition that the Court may exercise personal jurisdiction. In Panavision, defendant established a website which used plaintiff's registered mark as its domain name. The Ninth Circuit agreed that registering someone else's trademark as a domain name was not sufficient to subject a nonresident defendant to jurisdiction in the forum state. It found that personal jurisdiction was proper, however, because defendant did something more – it attempted to extort money from plaintiff to purchase the domain name. Id. at 1322. The Ninth Circuit concluded that defendant knew plaintiff would suffer harm in the forum state because it maintained its principal place of business in California where the heart of the motion picture industry is centered.

Here, the Exposed website attacked plaintiff as a business competitor of the other defendants, not as a Kansas corporation. While defendants knew that plaintiff was incorporated in Kansas, the website did not

16

focus on the state. The website makes no mention of Kansas or the parties' activities in Kansas, and it is not directed to users in Kansas any more than to users worldwide. Revell, 317 F.3d at 473; Young v. New Haven Advocate, 315 F.3d 256, 258 (4th Cir. 2002) (defendants who posted allegedly defamatory articles did not manifest intent to aim website at forum audience); Medinah Mining, Inc. v. Amunategui, 237 F. Supp.2d 1132, 1138 (D. Nev. 2002) (defamatory statements posted on website not sufficient to show defendants aimed statements at forum); Bailey v. Turbine Design, Inc., 86 F. Supp.2d 790, 795 (W.D. Tenn. 2000) (no purposeful availment where website not made to reach out to forum residents any more than to persons residing elsewhere). Plaintiff has offered no evidence of defendants' contact with Kansas. Plaintiff has not shown that Kansas was the focal point of the website or that defendants expressly aimed their tortious conduct at Kansas. Therefore plaintiff has not met its burden to show that defendants purposefully directed their activities at Kansas.

**IT IS THEREFORE ORDERED** that Cobalt Multimedia Inc.'s And Preston Hall's Motion To Dismiss Third Amended Complaint (Doc. #169) filed December 14, 2005 be and hereby is **SUSTAINED**.

Dated this 15th day of March, 2006 at Kansas City, Kansas.

                                          s/ Kathryn H. Vratil
                                          Kathryn H. Vratil
                                          United States District Judge