## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SUNLIGHT SAUNAS, INC.          )
                               )
            PLAINTIFF,         )
                               )
vs.                            )          Case No. 04-2597-KHV
                               )
SUNDANCE SAUNA, INC., et al.,  )
                               )
                               )
            DEFENDANTS.        )

## MEMORANDUM AND ORDER

This matter comes before the court on defendants' joint motion to strike portions of plaintiff's damages claim from the pretrial order (Doc. 172) and plaintiff's motion to strike portions of defendants' joint motion to strike, memorandum in support of joint motion to strike, and reply in support of joint motion to strike (Doc. 206).[1]  These matters have been fully briefed and are ripe for decision.[2]  The court will first consider plaintiff's motion to strike before turning to defendants' joint motion to strike.  For the reasons set forth below, both motions shall be denied and the pretrial order previously entered in this matter (Doc. 187) shall remain unaltered.

### I.    Plaintiff's Motion to Strike

Plaintiff seeks to have the court to strike portions of defendants' joint motion to strike and their memorandum and rely in support of that motion.  Specifically, plaintiff asks the court to strike all statements

---

[1] Defendants' joint motion to strike was filed prior to the entry of the pretrial order on December 21, 2006. The court elected to proceed with entry of the parties' pretrial order to permit the parties to move forward with other activities in the case, with the issue of whether to strike portions of plaintiff's damages claims from the pretrial order to be preserved and determined once the court had an opportunity to fully consider defendants' motion.  While the instant joint motion to strike was initially filed by defendants Sundance Sauna, Inc. ("Sundance"), Brighton Sauna, Inc. ("Brighton"), Preston Hall, and Cobalt Multimedia, Inc., defendants Hall and Cobalt Multimedia, Inc., were dismissed from this action on March 15, 2006, pursuant to the Memorandum and Order filed by the trial judge, U.S. District Judge Kathryn H. Vratil (Doc. 219).  As a consequence, the court considers any issues pertaining only to defendants Hall and Cobalt Multimedia, Inc., in the joint motion to strike to be moot and will only consider issues pertaining to remaining defendants Sundance and Brighton (collectively, "Defendants").

[2] With regard to defendants' joint motion to strike (Doc. 172), defendants have filed a memorandum in support of their motion (Doc. 173), to which plaintiff has filed a response in opposition (Doc. 176).  Defendants have also filed a reply in further support of their motion (Doc. 179).
With regard to plaintiff's motion to strike (Doc. 206), defendants have filed a response in opposition (Doc. 209), to which plaintiff has filed a reply (Doc. 218).

from these filings that assert that the defendants lacked knowledge prior to the time of the creation of the parties' proposed pretrial order of plaintiff's claims for damages based upon defendants' allegedly wrongfully obtained profits and plaintiff's corrective advertising expenses.  Plaintiff supports its request by evidence of statements defendants made in court filings in related litigation that, it believes, reflect an awareness of these claims on the part of defendants' at least as early as July of 2005.

Defendants contend that plaintiff's motion is improper on the grounds that Fed. R. Civ. P. 12(f), which provides the authority for motions to strike, addresses only motions to strike language from pleadings and does not extend to provide authority for motions to strike directed at other motions.  They further contend that even if plaintiff's motion was determined to be proper, it is untimely by virtue of having been filed after the time when a responsive filing made to their joint motion to strike.  Finally, they contend that, even if plaintiff's motion is considered on its merits and defendants are deemed to have been aware of what could constitute plaintiff's damages as early as July of 2005, that such an awareness was the result of speculation on their part and not the result of any proper damages disclosures by plaintiff, the lack of which serves as the basis of their joint motion to strike.

Plaintiff responds to defendants' procedural arguments in its reply by stating that it did not rely on Rule 12(f) as the authority for its motion, but instead grounds its motion in the court's "inherent powers to manage and control the case and evidence before it."[3]  With respect to defendants' substantive argument, plaintiff responds that defendants made statements in their filings in the related litigation that reflect an understanding that plaintiff had prayed for its actual damages in this matter, which would include, if plaintiff were to succeed on its claims, recovery of "its lost profits, its expenses of remedying any alleged Sundance wrongful conduct, loss of good will, loss of value of the business, losses resulting from reduction in price of goods sold, and under the Lanham Act, any Sundance profits earned as a result of Sundance's wrongful

---

[3] Plaintiff's Reply (Doc. 218), p. 1.

conduct."[4]  Plaintiff contends that this language reflects actual knowledge of what damages were sought by plaintiff at the time the statement was made and not speculation as to what plaintiff damages might be seeking, as defendants now represent.

As defendants correctly identify, Fed. R. Civ. P. 12(f) does address motions to strike and provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

It is well settled that motions are not pleadings,[5] and "[i]t has been held that a Rule 12(f) motion may not be directed at motions."[6]  Nevertheless, plaintiff is correct that courts do not always allow this to deter them from addressing a motion to strike, solely because it was not directed toward objectionable material contained in a "pleading."[7]

In this instance, the reality is that the substantive issues raised in the briefing of plaintiff's motion to strike are a continued discussion of the merits underlying defendants' joint motion to strike.  Plaintiff is identifying language from defendants' past court filings that tends to support its position that its claim for damages should be retained, and defendants are explaining how that language does not excuse plaintiff from the lack of proper disclosure they allege in their joint motion to strike.  Because these arguments are

---

[4] *Id.* at. pp. 2-3 (citing to pages 1 and 2 of Sundance's Suggestions in Opposition to Plaintiff's Motion to Quash and Objections to Subpoena Duces Tecum of Custodian of Records, filed on July 29, 2005, in Case No. 05-9060-mcw-NKL in the Western District of Missouri, and included as an exhibit to Plaintiffs Motion to Strike (Doc. 206) in the instant case).

[5] *Compare* Fed. R. Civ. P. 7(a) ("Pleadings. There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who is not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.  No other pleading shall be allowed, except that the court may order a reply to an answer or third-party answer.") *with* Fed. R. Civ. P. 7(b) ("Motions and Other Papers.  (1) An application to the court for an order shall be by motion . . . . (2) The rules applicable to captions and other matters of form of pleadings apply to all motions and other papers provided for by these rules.").

[6] *Jones v. City of Topeka*, 764 F.Supp. 1423, 1425 (D. Kan. 1991) (citing *Krass v. Thomson-CGR Medical Corp.*, 665 F.Supp. 844, 847 (N.D.Cal. 1987)).

[7] *See Id.* ("Notwithstanding the court's conclusion that it should not 'strike' plaintiff's motion for partial summary judgment, the court still must determine whether plaintiff's motion is properly before the court for consideration." (holding a motion to strike a motion for partial summary judgment on the basis of untimeliness to be improper but nonetheless finding the motion for partial summary judgment to be untimely)).

applicable to the merits of defendants' joint motion to strike, and because each party has had an equally full and fair opportunity to advance its additional arguments through the mechanism of the briefing on plaintiff's motion, the court prefers to consider these arguments as part of its evaluation of the larger question of whether to retain or strike portions of plaintiff's claim for damages from the pretrial order in this case.

Treating the parties' briefing regarding plaintiff's motion in this way, as additional briefing of the issues raised by defendants' joint motion, allows the court the opportunity to evaluate the broadest possible body of arguments available under the circumstances, ensures that all the parties' arguments may be given full consideration, and avoids the necessity of evaluating some of these arguments piecemeal.  Even assuming, as plaintiff contends, the court possesses the inherent authority to "cleanse the files of improper material,"[8] the court sees no necessity to strike statements and arguments made by defendants in their joint motion to strike, their memorandum in support, or in their reply.  Instead, the court shall deny plaintiff's motion to strike and consider the arguments raised by the parties in their briefing of plaintiff's motion as part of its evaluation of defendants' joint motion to strike portions of the plaintiff's damage claims from the pretrial order.

## II.    Defendants' Joint Motion to Strike

Defendants filed their joint motion on December 21, 2005, seeking to have the court strike portions of plaintiff's claims for damages from the parties' proposed pretrial order.  Specifically, defendants ask the court to strike plaintiff's claims for economic damages based upon alleged wrongfully obtained profits of the defendants and plaintiff's corrective advertising expenses on the basis that these species of damages were never properly disclosed pursuant to the requirements of Fed. R. Civ. P. 26(a)(1)(C).   The court elected to finalize and enter the pretrial order on January 19, 2006, so that the parties could proceed with the filing of dispositive motions without delay occasioned by the court's consideration of the instant motion

---

[8] *Bd. of Educ. of Evanston Twp. High Sch. Dist. No.  202 v. Admiral Heating and Ventilation, Inc.*, 94 F.R.D. 300, 304 (N.D. Ill. 1982).

to strike.  It was the court's intention to then evaluate the instant motion and determine whether to remove the language from the pretrial order, if necessary.

As a initial matter, the court notes that the same procedural arguments made above regarding the propriety of motions to strike directed at documents other than pleadings could also be leveled at defendants' joint motion to strike.  However, unlike plaintiff's motion above, defendants' joint motion is directed not at another motion, but at the pretrial order – a document which replaces the pleadings and "control[s] the subsequent course of the action."[9]  Because this document sets forth the claims and defenses of the parties, it is similar to pleadings in that respect.  Moreover, as noted by plaintiff with respect to its motion above, courts are not constrained to permit improper filings simply because their improprieties are revealed through the mechanism of a motion to strike that goes beyond Rule 12(f).

In this instance, there is ample authority for the remedy sought by defendants regardless of whether their motion should properly be titled a motion to strike.  Fed. R. Civ. P. 16(e), which addresses pretrial orders, provides that the pretrial order "shall control the subsequent course of the action unless modified by a subsequent order,' and the pretrial order "shall be modified only to prevent manifest injustice."  Therefore there is authority to modify a pretrial order by subsequent order if matters are brought to the court's attention demonstrating that it would manifestly unjust not to do so.

Moreover, Fed. R. Civ. P. 37 provides the court with authority to bar a party's use of information not properly disclosed during discovery.  "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless the failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."[10]  Defendants point to this provision of Rule 37 in their reply in further support of their joint motion and properly point out that this is a mandatory sanction and, further, that "[e]vasive or incomplete  answers are considered a failure to disclose" pursuant to Fed.

---

[9] Fed. R. Civ. P. 16(e).

[10] Fed. R. Civ. P. 37(c)(1).

R. Civ. P. 37(a)(3).[11]   Therefore, regardless of whether defendants' joint motion is correctly titled, it nonetheless seeks relief that is  expressly contemplated and permitted under the Federal Rules of Civil Procedure and is, therefore, deserving of consideration by the court on the merits.

Fed. R. Civ. P. 26(a)(1)(C) requires that a party make an initial disclosure of "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered . . . ." Fed. R. Civ. P. 26(e)(1) addresses a party's duty to supplement  its initial disclosures and provides in relevant part, "[a] party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is  incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process  or in writing."

Defendants contend that plaintiff has never made adequate disclosure of its claims for economic damages based upon the alleged wrongful profits of defendants or its own corrective advertising expenses, and that, as a result, they have not had the opportunity to take discovery related to these claims.  Plaintiff responds that is has made adequate disclosures to put defendants on notice as to its damage claims, and further that defendants have demonstrated actual knowledge of its damage claims during the course of discovery.

As noted above, Fed. R. Civ. P. 37(c) provides a remedy for situations where a party seeks to make use of information that was not properly disclosed during discovery.    "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless the failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."[12]  "[A]n

---

[11] Defendants' Reply (Doc. 179), pp. 1-2.

[12] Fed. R. Civ. P. 37(c)(1).

evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."[13]

"Under Rule 37(c)(1), the court must first consider whether the party [proposing to use the information] has established 'substantial justification' for the failure to disclose and then consider whether the failure to disclose was harmless. . . .   The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure."[14] "Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."[15]  "The proponents position must have a reasonable basis in law and fact."[16]  "The test is satisfied if there exists a genuine dispute concerning compliance."[17]  "Failure to comply with the mandate of the Rule [requiring the disclosure] is harmless when there is no prejudice to the party entitled to the disclosure."[18]

The United States Court of Appeals for the Tenth Circuit has provided additional guidance on what a court should consider in weighing substantial justification and harmlessness: "(1) the prejudice or surprise to the party against whom the [information] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [information] would disrupt the trial; and (4) the moving party's bad faith or willfulness." [19]

---

[13] Fed. R. Civ. P. 37(a)(3).

[14] *Nguyen v. I.B.P., Inc.*, 162 F.R.D. 675, 679-80 (D. Kan. 1995).

[15] *Id.* at 680.

[16] *Id.*

[17] *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d. 490 (1988).

[18] *Id.*

[19] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

Defendants' joint motion is directed at language in the pretrial order specifying plaintiff's claims for economic damages based upon the alleged wrongful profits of defendants and its own corrective advertising expenses. Plaintiff's claim for damages is set forth in Section 11. a. of the pretrial order, which states:

> Plaintiff has thus far suffered economic damages of approximately $2,000,000, including lost sales of at least $942,000 up to June 30, 2005—but which continues—Defendant Sundance's wrongfully obtained profits of approximately $400,000, and Defendant Brighton's wrongfully obtained profits of approximately $200,000, as well as injuries in the nature of corrective advertising expenses in that it has had to compensate its personnel for time spent correcting consumers' beliefs about its own products and the products of Defendant Sundance and Defendant Brighton, which mistaken beliefs are the result of the false, misleading, and disparaging statements of Sundance and Brighton. It also suffered non-economic damages, including lost good will, injury to reputation, and dilution of its trade name or mark, in an amount to be determined by the trier of fact. Sunlight Saunas is also entitled to statutory damages of $100,000 pursuant to the Anticybersquatting Act, 15 U.S.C. §§ 1125(d) and 1117. It also is entitled to attorneys' fees in an amount in excess of $150,000 pursuant to 15 U.S.C. §§ 15, 1125(a) and 1117, which amount is unliquidated and continues to accumulate. Furthermore, Sunlight is entitled to recover treble damages and costs pursuant to 15 U.S.C. §15, and enhanced damages pursuant to 15 U.S.C. § 1117(a).
> Plaintiffs further seek an assessment of punitive damages against each of the individual defendants as a result of their willful and outrageous conduct as follows: Sundance ($1,000,000); Brighton ($500,000); Cobalt Multimedia ($250,000); and Preston Hall ($100,000).[20]

Plaintiff served its initial disclosures upon defendants Sundance and Sauna by Airwall, the only defendants at that time, on April 4, 2005, including the following as its disclosure of damage computations pursuant to Fed. R. Civ. P. 26(a)(1)(C):

> A final damages computation has not been determined, but initial estimates indicate that lost sales loss of good will, as well as other injuries suffered by Sunlight Saunas, Inc., exceeds $3,000,000.00."[21]

On April 8, 2005, plaintiff served its response to defendant Sundance's first set of interrogatories upon defendants Sundance and Sauna By Airwall. In response to Interrogatory No. 4, concerning damages, plaintiff stated:

> Although a final calculation of damages is not available at this time, Sunlight Saunas estimates that lost profits, lost consumer goodwill, exemplary damages under the Lanham Act, including costs and attorneys' fees, exceed five million dollars ($5,000,000). The

---

[20] Pretrial Order (Doc. 187), at pp. 34-35.

[21] Plaintiff's Initial Disclosures, attached to Defendants' Joint Motion to Strike (Doc. 172), Ex. A, p. 5.

damages occurred as a result of the defendants' tortious interference with Sunlight Saunas' business relationships – both consummated and prospective – the defamation of Sunlight Saunas and its products, the infringement of Sunlight Saunas' trademark or trade name, as well as from the defendants' violations of the Lanham Act and Sherman Act, and the defendants other unfair business practices.[22]

On August 15, 2005, plaintiff served its Fed. R. Civ. P. 26(a)(2) disclosure of its retained expert, Charles E. Finch, upon defendants Sundance, Brighton, and Sauna By Airwall.[23]  In his report provided with this disclosure, Mr. Finch stated that plaintiff's "[d]amages under the Lanham Act would be calculated by taking the revenue from sales transactions found to be in violation of the Lanham Act and applying the lost profits methodology previously discussed in this report."[24]  The lost profits methodology refers to the method the expert describes for the calculation of profits lost to plaintiff as a result of revenue lost to plaintiff, earlier in his report.  Therefore, in context, the expert's statement of damages under the Lanham Act can only mean that plaintiff intends to apply the same profit calculation method to any revenues of defendants, determined to be wrongful under the Lanham Act, in order to determine the amount of wrongful profits derived from those wrongful revenues.

On September 13, 2005, plaintiff served supplemental Fed. R. Civ. P. 26 disclosures, which repeated verbatim the disclosure of damage computations contained in its initial disclosures and quoted above.[25]  This disclosure was served upon defendants Sundance, Brighton, Sauna By Airwall, Preston Hall, and Cobalt Multimedia, Inc.

On October 24, 2005, plaintiff served its answers to defendant Brighton's first set of interrogatories.  These interrogatories were directed at each of the claims for relief asserted by plaintiff and contained a subpart concerning the nature of calculation of damages for each such claim.  In response to

---

[22] Plaintiff's Response to Defendant Sundance's First Set of Interrogatories, attached to Defendants' Joint Motion to Strike (Doc. 172), Ex. C, p. 5.

[23] *See* Certificate of Service (Doc. 77).

[24] Report of Plaintiff's Expert, Charles E. Finch, attached to Plaintiff's Response to Defendants' Joint Motion to Strike (Doc. 176), Ex.2, p. 7.

[25] Plaintiff's Supplemental Rule 26 Disclosures, attached to Defendants' Joint Motion to Strike (Doc. 172), Ex. B, p. 16.

each such subpart, plaintiff responded with substantially similar answers, claiming that "damages sustained include lost sales, lost profits, lost good will, damaged reputation, and lost business opportunities, each of which is calculated by assessing the impact of the acts committed by Brighton's employees."[26]  In response to Subpart (f) of Interrogatory No. 3, plaintiff additionally stated, "The damages suffered by Sunlight Saunas have been calculated to exceed five million dollars."   It is worthy of note that neither these interrogatory responses, nor plaintiff's response to defendant Sundance's first interrogatories referenced above, were the subject of any motion to compel.

D. Kan. Rule 37.1(b) provides that "[a]ny motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 shall be filed and served within 30 days of the default or service of the response, answer, or objection which is the subject of the motion, . . . . [o]therwise the objection to the default, response, answer, or objection shall be waived."   While this rule certainly cannot operate to bar an objection to some later event, such as the assertion of an allegedly new claim of damages in this instance, on the basis that prior response provided inadequate notice or was misleading, the fact that defendants did not seek to compel more complete answers and allowed any right to do so to become time barred strongly suggests that they did not view plaintiff's answers to be incomplete or evasive at the time.

As noted above, in making a determination pursuant to Fed. R. Civ. P. 37(c)(1), the court must look to whether there is substantial justification for any alleged failure to disclose and evaluate whether the alleged failure to disclose is harmless.[27]   The court should consider "(1) the prejudice or surprise to the party against whom the [information] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [information] would disrupt the trial; and (4) the moving party's bad faith or willfulness." [28]

---

[26] *See* Plaintiff's Answers to Defendant Brighton's First Set of Interrogatories, attached to Defendants' Joint Motion to Strike (Doc. 172), Ex. D.

[27] *Nguyen v. I.B.P., Inc.*, 162 F.R.D. 675, 679-80 (D. Kan. 1995).

[28] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

In this instance, any prejudice to defendants would result from a lack of notice of the nature of plaintiff's damage claims that resulted in their inability to conduct adequate discovery. As evidenced from the disclosures and interrogatory responses above, plaintiff has consistently enumerated damage calculations of three to five million dollars. As such, the lowest estimation of economic damages provided by plaintiff in its disclosures and responses exceeds by approximately a million dollars, or fifty percent, the two million dollar figure for economic damages it asserts as it s estimate of economic damages in the pretrial order. As the amount of economic damages claimed by plaintiff in the pretrial order is substantially less that its prior estimates, defendants certainly cannot claim to have been unfairly surprised or prejudiced with regard to the amount of damages now being claimed by plaintiff.

Defendants' specific objection, however, is not to the amount of plaintiff's economic damages; but rather, is to the use of their allegedly wrongful profits and plaintiff's costs of corrective advertising as a method of calculation for those damages. It is not disputed specific terms are not used by plaintiff in its disclosures and responses related to its calculation of damages. Terms are used which, arguably are broad enough to encompass these specific categories. Certainly the profits a competitor realized at plaintiff's expense could be in some manner reflective of plaintiff's lost sales and the costs of corrective advertising could be considered necessary mitigation related to the assertion of a claim for loss of good will. Additionally, the use of the general catch all phrase "other injuries suffered by Sunlight Saunas" strongly implies that plaintiff intended, at the time of its first disclosure, to cast its net as broadly as possible to encompass any specie of damages it could support as a result of information developed during discovery.

However, these possible interpretations notwithstanding, the question remains whether defendants were provided with adequate notice to permit them to conduct discovery prior to seeing plaintiff's statement of damages at the time the parties developed the proposed pretrial order. The court is satisfied that defendants did receive adequate notice in time to conduct the necessary discovery because of evidence that they had considered at least the possibility of plaintiff obtaining damages based upon their profits and its own costs of corrective advertising as early as July of 2005, four months before discovery was

completed in the case.  In its suggestions in opposition to a motion to quash filed by plaintiff in the Western District of Missouri, filed July 29, 2005, defendant Sundance stated, as part of its description of the case, that "Sunlight has prayed for its actual damages, essentially all of its actual damages, with respect to these claims."[29]  Defendant Sundance goes on to state, "If successful, Sunlight could recover lost profits, *its expenses of remedying any alleged Sundance wrongful conduct*, loss of good will, loss of value of the business, losses resulting from reductions in price on goods sold, and, under the Lanham Act, *any Sundance profits earned as a result of Sundance's wrongful conduct*."[30]  While defendant Sundance's demonstration of this knowledge of plaintiff's damages is not completely dispositive as to whether plaintiff's disclosures were adequate, it certainly reflects that any claim that defendant Sundance was not aware of the possibility of plaintiff's damages including defendants' wrongful profits and plaintiff's costs of corrective advertising would be, at best, disingenuous.  Moreover, there can be no issue that what was known to defendant Sundance was unknown to defendant Brighton because the counsel who signed  defendant Sundance's suggestions in opposition to the motion to quash, Jerome T. Wolf, is counsel of record for both defendants Sundance and Brighton in the instant case.

With regard to defendants' opportunities to undertake discovery related to these disputed damage claims, it is clear from the materials provided to the court that defendants, on at least one occasion, have had just such an opportunity and declined to pursue it.  On June 29, 2005, defendant Sundance took a Fed. R. Civ. P. 30(b)(6) deposition of plaintiff's designated representative Connie Zack.  At the time of this deposition, defendant Sundance was already in possession of plaintiff's  initial disclosures and answers to Sundance's first set of interrogatories.  During the deposition, counsel for defendant Sundance inquired of Mr. Zack regarding plaintiff's calculation of damages and, on numerous occasions, attempted to focus Mr. Zack's testimony on the internal documents plaintiff used to calculate plaintiff's damages.  When Mr.

---

[29] Sundance's Suggestions in Opposition to Plaintiff's Motion to Quash and Objections to Subpoena Duces Tecum of Custodian of Records, filed on July 29, 2005, in Case No. 05-9060-mcw-NKL in the Western District of Missouri, attached as an exhibit to Plaintiffs Motion to Strike (Doc. 206), p. 1.

[30] *Id.* at pp. 1-2 (emphasis added).

Zack provided answers about the types of damages plaintiff sought to recover, the inquiry was refocused on the documents that were used to calculate damages and the actual procedure of calculating the damages. Example of this are the following exchanges:

> Q: I want to know what financial documents you are looking at with respect to money damages.
>
> A: I am saying that we are looking at the bigger picture of all the losses that we have potentially incurred, the defamation to our brand name, the loss of potential sales, et cetera.
>
> Q: I move to strike the answer on the grounds it's not responsive. I'm asking you about documents, not what you are conceptually looking at.[31]
>
> . . .
>
> Q: Okay. What have you done to contribute to calculation of damages?
>
> A: Shared a lot of me knowledge of the damages that have been done.
>
> Q: What are those damages?
>
> A: There is defamation to our brand name. There is loss of sales. There is preventing us from possibly exhibiting at home shows.
>
> Q: I understand that, but I am talking about calculating. Do you know what a calculation is? Doing the math, calculating the damage. I know what the complaints are.[32]

The court does not mean to suggest that defendant Sundance's counsel's inquiry was improper or in some manner directed at issues that were not worthy of discovery. Certainly, defendant Sundance has a valid interest in determining what documents are being relied on in support of plaintiff's damage claims and how those claims were calculated. What these exchanges do illustrate, however, is that defendant Sundance had an opportunity to depose a witness that demonstrated knowledge and understanding of the theories of damages plaintiff was pursuing in this action and could have been utilized to clarify any uncertainty defendant Sundance had at the time on these issues.

Because the court finds that defendants demonstrated an awareness that plaintiff's damages could potentially include both defendants' profits from sales determined to be wrongful under the Lanham Act and plaintiff's actual expenses of remedying such wrongful conduct as early as July of 2005, the court does not believe that defendants have been unfairly surprised or prejudiced as a result of plaintiff's expansion

---

[31] Deposition of Connie Zack, attached to Plaintiff's Response to Defendants' Joint Motion to Strike (Doc. 176), Ex.3, p. 4 (internal p.80, lines 4-15).

[32] *Id.* at p. 5 (internal pp. 82, lines 21-25, and 83, lines 1-9).

of the description of its damage claims included in the pretrial order. Since the court does not find there to be any prejudice, there can be no issue of whether any prejudice may be cured. Therefore, the court finds that the first two factors weigh in favor of finding any failure to disclose to be harmless.

Turning to the remaining factors to be considered, there is no issue of disruption of trial in this instance. The pretrial order was entered on January 19, 2006, and this matter is not set for trial until Judge Vratil's docket beginning April 18, 2006. The case is still at the stage where dispositive motions are under consideration, motions which could potentially have a far more extensive impact on the trial of the matter than the instant decision. Therefore, the court finds the third factor weighs in favor of finding any failure to disclose to be harmless.

With regard to the fourth factor, the bad faith or willfulness of any alleged failure to disclose, the court does not find that plaintiff has demonstrated bad faith or acted willfully as a result of its disclosures related to damages. Certainly plaintiff's damage disclosures have been vague and general, and the court is not prepared to say that such generalized statements would always suffice to fully satisfy the disclosure requirement; however, in this instance, these disclosures coupled with the law giving rise to plaintiff's theories of recovery have been sufficient to provide defendants with an actual awareness of what damages plaintiff could potentially receive if successful in this action. Moreover, while the court would prefer to have seen greater specificity as to the items contributing to the overall amount of damages plaintiff claimed, the fact remains that the dollar amount of damages claimed by plaintiff in the pretrial order was substantially less than the amount provided to defendants in plaintiff's discovery disclosures and responses. As such, defendants were not misled as to the extent of their potential exposure or blind sided with a larger amount of damages at the time of the pretrial than had been known to them during the course of discovery. The court, therefore, finds that plaintiff did not act in bad faith, and that this final factor weighs in favor of considering any failure to disclose to be harmless.

The court is not prepared to find that plaintiff's damage disclosures were so inadequate as to be treated as a failure to disclose under the circumstances in this case. Additionally, were the court to do so,

it nonetheless finds that all the relevant factors weigh in favor of any such failure to disclose being harmless. As a result, the court finds that plaintiff's claim for damages in the pretrial order should not be barred by the operation of Fed. R. Civ. P. 37(c)(1) and that defendants' joint motion to strike should, therefore, be denied.

**IT IS THEREFORE ORDERED** that defendants' joint motion to strike (Doc. 172) and plaintiff's motion to strike (Doc. 206) are hereby DENIED.

**IT IS SO ORDERED.**

Dated this 24th day of March, 2006, at Topeka, Kansas.

s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge