**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **SUNLIGHT SAUNAS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **Case No. 04-2597** |
| **SUNDANCE SAUNA, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

Sunlight Saunas, Inc. filed suit against Sundance Sauna, Inc. and Brighton Sauna, Inc. for defamation, false advertising, false description and cybersquatting. Defendants filed counterclaims for false advertising. As to plaintiff's claims, on May 2, 2006, the jury found that Sundance (1) was liable for $2,500 actual damages and $150,000 punitive damages for defamation under Kansas law; (2) was liable for $1.00 actual damages for false advertising and $1.00 actual damages for false description under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; and (3) was not liable for cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). The jury exonerated Brighton from liability on all claims. As to defendants' counterclaims, the jury found that Sunlight was liable to both Sundance and Brighton for $1.00 actual damages for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). See Jury Verdict (Doc. #324). At the close of plaintiff's evidence and again at the close of all evidence, Sundance and Brighton moved for judgment as a matter of law on Sunlight's claims against them. Doc. #315. The Court took the motion under

advisement pending the jury verdict.[1]  This matter comes before the Court on defendants' Motion For Judgment As A Matter Of Law (Doc. #315) filed May 1, 2006.  For reasons stated below, the Court denies defendants' motion.

## Standards For Motion For Judgment As A Matter Of Law

A court should be cautious and sparing in granting judgment as a matter of law under Rule 50(b), Fed. R. Civ. P.  Zuchel v. City & County of Denver, 997 F.2d 730, 734 (10th Cir. 1993).  A party is entitled to judgment as a matter of law if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.  Johnson v. Unified Gov't of Wyandotte County/Kan. City, Kan., 371 F.3d 723, 728 (10th Cir. 2004).  If the record does not include a legally sufficient evidentiary basis for a claim under the controlling law, judgment as a matter of law is proper.  Brown v. Gray, 227 F.3d 1278, 1285 (10th Cir. 2000); Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir. 1997).  The Court may not weigh the evidence, consider witness credibility or substitute its judgment for that of the jury.  Affiliated FM Ins. Co. v. Neosho Constr. Co., Inc., 192 F.R.D. 662, 666 (D. Kan. 2000).  The Court must find that more than a scintilla of evidence favors the nonmoving party.  See Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir. 1988).  The Court views the evidence in favor of the nonmoving party.  Id.

## Factual Background

Briefly summarized, the evidence at trial was as follows:

In January of 2000, Jason Jeffers started doing business under the trade name "Sunlight Saunas." Sunlight sold saunas and sauna products at trade shows and through a website at www.sunlightsaunas.com.

---

[1]  Brighton also filed a separate motion for judgment as a matter of law on plaintiff's claims against it.  Doc. #317.  The Court has overruled that motion as moot because the jury did not return a verdict against Brighton.  See Doc. #328 filed May 18, 2006.

In the spring of 2002, Matt Thomas worked for Sunlight. On May 24, 2002, Jeffers, Thomas, Aaron Zack, Connie Zack and other Sunlight employees held a managers' meeting. During the meeting, the discussion between Jeffers and Thomas became heated. Thomas resigned four days later, citing "irreconcilable differences," and incorporated Sundance Sauna, Inc. the following month. Thomas harbored negative feelings toward Sunlight, and on January 23, 2004, he stated that he would devote "unbelievable resources" to dissolve it.

In June of 2002, Aaron Zack became CEO of Sunlight.

In July of 2003, Sunlight began selling saunas manufactured by American Infrared Sauna, Inc. ("AIS"). Sunlight sold AIS saunas under two names: the Ra Class and the Phoenix Class. Sunlight created a brochure and printed 10,000 copies. The brochures contained the following statements:

- Inside the Ra's stylish cabin, you'll bask in the pure radiant heat of our patented Quantum Wave Technology™ far-infrared heaters, for a penetrating, detoxifying sweat unlike any other.

- Every Ra-Class sauna embraces the leadership of Sunlight innovations such as Quantum Wave Technology™ far-infrared heaters with remote control activation and our veneer-free cabinetry with solid wood, non-toxic framework.

- No veneer sheets are used anywhere – even the ceiling and back panel are solid, tongue and groove, Grade "A" clear Canadian cedar.

- Every electrical wire is coated with steel for EMF radiation shielding and fire-hazard protection.

- We would not settle until 100% of the exposed wood was made from pure bass, the wood of choice for beekeepers because of its tannin-free, hypoallergenic properties. We also did away with the plywood which omits [sic] toxic formaldehyde.

- We called it *Quantum Wave Technology*. Then we patented it.

- Some manufacturers use thin veneer sheets instead of the good stuff. At Sunlight, we employ beautiful tongue and groove wood to the entire sauna, including the ceiling,

3

>   floor, back wall and benches.

Exhibits 603 and 646. On its website and in the brochure, Sunlight represented that its heater was pure ceramic. Sunlight's website included a chart which compared its products to its competitors' products. At trial, evidence showed that contrary to the statements in the advertising brochures, the Ra contained veneer and some wires were not coated with steel or housed in conduit. In about August of 2004, Sunlight learned that contrary to its advertising, its saunas contained luan around the air vents, the Quantum Wave Technology had not been patented and its heaters were not pure ceramic. Aaron Zack testified that Sunlight immediately changed its advertising, but it actually continued to distribute the inaccurate brochures for another year, until August of 2005.

Meanwhile, on October 7, 2004, at the direction of Thomas, Preston Hall posted a website ("Hall/Thomas website") at www.sunlightsaunas-exposed.com. It stated as follows:

>   Sunlight Saunas Lies
>   Lie #1: True Ceramic Heaters
>     Sunlight Saunas claim that their saunas offer ceramic infrared heaters.
>   The Truth
>     Sunlight Sauna's heaters are made from steel rods and aluminum casing with pink paint. Aluminum can be incredibly toxic inside the body.
>   Lie #2: Veneer Free Construction
>     Sunlight Saunas would have you believe that each of their saunas were 100% veneer free[.]
>   The Truth
>     Veneer roof, Veneer "Fresh Air Vent" (doesn't this contradict their entire sales pitch about veneer free?). Not so state-of-the-art antenna.
>   Lie #3: No Safety Warnings
>     Sunlight Saunas has no safety compliance.
>   The Truth
>     Ever wonder why they aren't UL, CSA, or ETL certified? Ask your home Insurance company about products with heaters operating at several hundred degrees that don't meet these standards. Infrared sauna Heaters operate between 300 and 600 degrees [F]ahrenheit. Can you imagine buying an oven that has not been certified to the minimum standards the USA has established for safety? Now imagine putting those

> oven heating elements inches from kiln dried wood without any safety certification. Sounds crazy but Sunlight as usual takes the shortcut to profit.
>
> Lie #4: Lifetime Warranty
>> Sunlight Saunas offers a lifetime Warranty[.]
>
> The Truth
>> Sunlight Saunas would have you believe they are the manufacturer, yet another lie. Do these models look familiar? Sunlight Saunas have changed manufacturers three times in four years. American Infrared Sauna has only been manufacturing since 2003. How can they promise a lifetime?
>
> Lie #5
>> Sunlight Saunas presents a list of "exclusive" features. Claiming to be unique.
>
> The Truth
>> Sunlight Saunas doesn't even manufacture their own saunas. Other company's [sic] offer the same products without the fraudulent claims.

Plaintiff's Exhibit 238. The website allowed users to send an email to an Internet address at sunlightsaunas@yahoo.com. The day Hall posted the website, Thomas e-mailed Hall and two other Sundance employees, stating that the website was going to take Sunlight down "pretty hard." A Sundance employee also sent a link to the website to about 14 of plaintiff's competitors. On November 5, 2004, Hall took the website down. While it was up, some 301 hosts accessed the website.

When the website went up, Sunlight had CE certification for its wood saunas. It did not have any certification by Underwriters Laboratory ("UL"), the Canadian Standards Association ("CSA") or Electrical Tests Labs ("ETL"). It provided a manual with every sauna, however, and the manual contained safety warnings and information. Sunlight offered a lifetime warranty through the manufacturer. Evidence showed that Sunlight did not manufacture its saunas and that it used three different manufacturers over four years. As to the composition of Sunlight's heater, Dr. Ron Wells, defendants' expert, testified that the heater panels consisted of extruded aluminum alloy, that the heating element was metallic (but not steel), that material inside the heating element was silicone rubber and conductive metal (most likely nichrome) and that the outside coating was a silica spray. Wells testified that the heater was 99 per cent aluminum and one per cent ceramic, and that the

5

ceramic in the coating was not pure ceramic.

Connie Zack, director of sales at Sunlight, testified that the sales staff did not meet its sales goals in October, November and December of 2004. Zack stated that after the Hall/Thomas website went live, the phones in the office stopped ringing, sales leads and sales were down and distributor applications decreased. Zack testified that Sunlight had to lower its prices and more sales were cancelled (in particular, Dan Cabral, Darren Jordison and Diana Harbison cancelled their contracts). She stated that customers were agitated and asked numerous questions, including: "Are your heaters toxic?;" "Am I going to get Alzheimer's disease from using your heaters?;" "How do I know you're not going to go out of business?;" "Is my house at risk from a fire hazard if I buy your sauna?;" and "Where can I get more information about your company so I can feel better about working with you?" Zack testified that she never tried to calculate actual damages and in fact she characterized them as "impossible to quantify."

Connie Zack also testified that Sunlight's reputation had been great but that it was damaged; people had been deterred from associating with the company and it now has a lower reputation.

In July of 2005, Sunlight filed suit against Jeffers in Jackson County, Missouri, alleging that as Sunlight's Director of Marketing, he stopped going to work in January of 2005, refused to perform his duties and publicly made disparaging remarks about the company.

## **Analysis**

At the close of plaintiff's evidence and again at the close of all evidence, defendants sought judgment as a matter of law on plaintiff's claims against them, under Rule 50, Fed. R. Civ. P. The Court took the motions under advisement. Because the jury found that Brighton was not liable to Sunlight, the Court considers the

motion only as to Sundance.[2]

## I. Defamation

Sunlight alleged that Sundance defamed it in statements on the Hall/Thomas website. The jury found in favor of Sunlight, and awarded $2,500 actual damages and $150,000 punitive damages on this claim. Sundance asserts that it is entitled to judgment as a matter of law because (1) Sunlight's defamation claim is indistinguishable from a business disparagement claim, which Kansas does not recognize; (2) Kansas law does not recognize defamation claims by corporations; (3) Sunlight's claims are solely product disparagement claims; and (4) Sunlight has not proven damages.

### A. Defamation Claims As Business Disparagement Claims In Disguise

Sundance first claims that plaintiff's defamation claims constitute business disparagement claims, which Kansas law does not recognize. Sundance is correct in stating that Kansas courts have declined to recognize claims for business disparagement. In St. Catherine Hospital of Garden City, Kansas v. Rodriguez, 25 Kan. App.2d 763, 971 P.2d 754 (1998), counterclaimant alleged defamation, business defamation and business disparagement, contending that hospital employees and physicians made statements which diminished his business. In St. Catherine, the Kansas Court of Appeals expressly declined to recognize the tort of business disparagement although it has been recognized in other states. 25 Kan. App.2d at 768, 971 P.2d at 757; see also Rodriguez v. ECRI Shared Servs., 984 F. Supp. 1363, 1368 (D. Kan. 1997) (business disparagement claim not recognized in Kansas). Significantly, the Kansas Court of Appeals characterized counterclaimant's claims as defamation. Sundance is not entitled to judgment as a matter of law on this ground.

---

[2] As noted, Brighton's separate motion for judgment as a matter of law on plaintiff's claims is moot. Doc. #328. Brighton did not seek judgment as a matter of law on its counterclaims.

### B. Defamation Claims By Corporations

Sundance next argues that a cause of action for defamation is available only to individual persons and that a corporation cannot be defamed. Sundance does not cite any case in which Kansas state courts have expressly addressed this question. In National Motor Club of America v. Auto Club of America Corp., No. 01-4077-SAC, 2003 WL 715902 (D. Kan. 2003), Judge Crow considered whether a business could sue for defamation under Kansas law. Noting that the Restatement of Torts recognizes the tort of defamation of a corporation, and citing numerous cases from other jurisdictions, Judge Crow concluded that because the alleged statements could prejudice the business entity in the conduct of its business or deter others from dealing with it, it could bring a defamation claim. Id. at *5. In addition, while nearly all defamation claims appear to be brought by individuals, the syllabus language in St. Catherine, drafted by the Kansas Court of Appeals, suggests that it did not intend to limit defamation claims to individual persons. The syllabus states that "[i]n order to prove defamation, a party must prove that his, her, or its reputation has been damaged in the community." Id. at Syl. ¶ 4. The inclusion of the term "its" implies that an entity other than a person can be defamed. Furthermore, Kansas courts have addressed issues in cases involving business defamation without suggesting that businesses cannot be defamed. See, e.g., Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc., 214 Kan. 139, 519 P.2d 682 (1974) (trucking business protected by absolute privilege against another trucking business' libel claims); Meyer Land & Cattle Co. v. Lincoln County Conservation Dist., 29 Kan. App.2d 746, 31 P.3d 970 (Kan. App. 2001) (statute of limitations barred cattle yard company from bringing defamation claims); see also Classic Commc'ns, Inc. v. Rural Tel. Serv. Co., Inc., 956 F. Supp. 910, 920-21 (D. Kan. 1997) (corporation's defamation claim not dismissed). Sundance is not entitled to judgment as a matter of law on these grounds.

### C.     Defamation Claims As Solely Product Disparagement Claims

Sundance next argues that Sunlight's defamation claims are solely product disparagement claims. Specifically, Sundance contends that in the pretrial order, Sunlight alleges that defendants provided "false or misleading information about the company and its products," and that this allegation tied all defamation claims to product disparagement. See Pretrial Order (Doc. #187) filed January 19, 2006 at 11. The Court disagrees with this re-characterization of plaintiff's claim. Sunlight's allegations are easily read as claiming that Sundance (1) defamed Sunlight by stating that it lies, and (2) disparaged its products. The repeated allegation that Sunlight lies is more than simple product disparagement. Sundance is not entitled to judgment as a matter of law on this ground.

### D.     Damages

Sundance next argues that Sunlight did not produce evidence of special damages as required by Kansas law. Under Kansas law, damages for defamation must be established by proof. Gobin v. Globe Publ'g Co., 232 Kan. 1, 4-5, 649 P.2d 1239 1242 (1982). In a defamation case, "special damages" are the same as actual damages. Hall v. Kan. Farm Bureau, 274 Kan. 263, 275, 50 P.3d 495, 504 (2002). In Moran v. State, 267 Kan. 583, 985 P.2d 127 (1999), the Kansas Supreme Court considered the proof required in a defamation case and adopted language from the Supreme Court opinion in Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974), which stated as follows:

> We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

9

Gertz, 418 U.S. at 349-50. In Moran, the Kansas Supreme Court concluded that plaintiff did not need testimony of an expert witness to establish harm to reputation.

Sundance argues that Sunlight must show quantifiable evidence of lost business, and that it did not do so at trial. Sunlight responds that Connie Zack testified about sales which it lost because of the Hall/Thomas website, calls from at least five customers who expressed concern about topics raised on the website, and Sunlight's failure to meet sales goals.[3] In addition, Sunlight produced evidence that at least three customers – Dan Cabral, Darren Jordison and Diana Harbison – cancelled sauna purchase contracts because of the Hall/Thomas website.[4] After the website went up, Sunlight sales staff, distributors and management spent time dealing with disgruntled and confused consumers, some of whom questioned its reputation. Also, sales, sales leads and distributor applications decreased – while cancelled sales increased – after the website went up. Based on this evidence, the Court cannot conclude that the evidence points but one way and is susceptible to no reasonable inferences supporting Sunlight's claim that it sustained damage to its reputation. Defendant's motion is therefore denied.

## II.     False Description

Sunlight alleged that defendants engaged in false description by using plaintiff's trademark on the Hall/Thomas website in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a). The jury found that Sundance was liable to Sunlight on this claim, and awarded $1.00 actual damages.

---

[3] Sunlight also cites facts in the Court's summary judgment order. Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 427 F. Supp.2d 1032 (D. Kan. 2006). Evidence as to some of these facts was inadmissible, or was not presented at trial. Moreover, on this motion, the Court only considers evidence produced at trial.

[4] The record contains no evidence regarding the number, type or cost of the saunas involved in the cancelled contracts or the anticipated profits from those sales.

To establish false description , plaintiff must first show that its trademark qualifies for protection, that is, that it is either inherently distinctive or has acquired secondary meaning. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). If plaintiff's mark qualifies for protection, then under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), plaintiff must show that (1) defendants used a false designation of origin or false description or representation in connection with goods or services; (2) the goods or services entered interstate commerce; and (3) plaintiff was damaged by the use of such false description. See Polo Fashions, Inc. v. Diebolt, Inc., 634 F. Supp. 786, 789-90 (D. Kan. 1986); see also Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 696 (7th Cir. 1999). Plaintiff must also show that the description or representation was likely to cause confusion. Polo Fashions, Inc., 634 F. Supp. at 789-90. To establish a false description claim, plaintiff must show confusion as to the affiliation, connection, approval, sponsorship or association of a product or service. 15 U.S.C. § 1125(a)(1).

Sundance argues that it is entitled to judgment as a matter of law on Sunlight's false description claim because Sunlight offered no evidence that its trademark is distinctive and that it cannot demonstrate a likelihood of confusion.

### A. Distinctiveness And Secondary Meaning

To establish false description, plaintiff must first show that its trademark qualifies for protection, that is, that it is either inherently distinctive or has acquired secondary meaning. Marks which are arbitrary and fanciful or suggestive are inherently distinctive.

> A fanciful mark is a word that is coined for the express purpose of functioning as a trademark. It could also be any obscure or archaic term not familiar to buyers. An arbitrary mark consists of a word or symbol that is in common usage in the language, but is arbitrarily applied to the goods or services in question in such a way that it is not descriptive or suggestive.

2 J. Thomas McCarthy, Trademarks and Unfair Competition § 11:4 (4th ed. 2006). A suggestive mark is one

which merely suggests a quality or ingredient of goods. Id. § 11:62. To be protectable, unregistered marks which are not inherently distinctive must have acquired secondary meaning, that is, the mark has become distinctive. Id. § 15:1.

Sundance does not appear to make a direct claim that Sunlight's trademark is not inherently distinctive, or that it has not acquired secondary meaning. The record, however, established that "Sunlight Saunas" is an arbitrary or suggestive mark. An arbitrary mark consists of common words applied in unfamiliar ways. See Donchez v. Coors Brewing Co., 392 F.3d 1211, 1217 (10th Cir. 2004). Examples of arbitrary marks include "ARROW liqueurs," "COMMAND hair care products," "LIVE WIRE film and television production." Id. § 11:13 (citations omitted). A suggestive mark connotes a quality or characteristic of a product or service. Examples of suggestive marks include "CHICKEN OF THE SEA tuna," "COPPERTONE sun tan oil," "HANDI WIPES dusting cloths," "ORANGE CRUSH orange drinks," "SOFT SMOKE smoking tobacco" and "WRANGLER western boots and jeans." Id. § 11:72 (citations omitted). Arbitrary and suggestive marks do not require proof of secondary meaning. See Donchez, 392 F.3d at 1217 (fanciful, arbitrary and suggestive marks are inherently distinctive). Here, Sundance did not seek an instruction on the issue whether "Sunlight Saunas" was an arbitrary or suggestive mark, or argue that the evidence raised a factual issue which the jury was required to decide. See, e.g., Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Assoc., 651 F.2d 311 (5th Cir. 1981) ("Sun Bank" arbitrary or fanciful mark when applied to banking services). In this case, "Sunlight Saunas" is an arbitrary or suggestive mark when applied to infrared saunas. Accordingly, defendant is not entitled to judgment as a matter of law on the ground that plaintiff failed to show that its mark was inherently distinctive.

Because inherent distinctiveness was established, plaintiff was not required to produce evidence of

12

secondary meaning.

### B.   Likelihood Of Confusion

Sundance argues that Sunlight has not produced evidence of likelihood of confusion under <u>Beer Nuts, Inc. v. Clover Club Foods Co.</u>, 711 F.2d 934, 940 (10th Cir. 1983). Specifically, Sundance cites testimony by Aaron Zack that customers do extensive research before purchasing saunas, that customers do not make snap decisions in purchasing saunas and that therefore customers were not likely to have been deceived by its use of plaintiff's trademark on the Hall/Thomas website. In <u>Beer Nuts</u>, the Tenth Circuit set forth guiding factors in determining the likelihood of confusion as follows:

> (a)   the degree of similarity between the designation and the trade-mark or trade name in
>    (i)   appearance;
>    (ii)   pronunciation of the words used;
>    (iii)   verbal translation of the pictures or designs involved;
>    (iv)   suggestion;
> (b)   the intent of the actor in adopting the designation;
> (c)   the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;
> (d)   the degree of care likely to be exercised by purchasers.

<u>Id.</u> (adopting factors as set out in <u>Restatement of Torts</u> § 729 (1938)). The Tenth Circuit emphasized that no one factor is determinative, and that the list is not exhaustive. <u>Id.</u> Sundance's argument addresses only the last factor. As to the other factors, Sunlight produced compelling evidence that (1) the trade name at issue was precisely the trade name used by Sunlight; (2) Sundance used Sunlight's trade name on the Hall/Thomas website with malicious intent to harm Sunlight; and (3) both companies marketed their products through similar means – trade shows and internet advertising. In addition, the record contains no evidence regarding the degree of care which potential purchasers exercised in reviewing the website. Because no one factor is determinative and Sunlight produced strong evidence of the most salient factors, Sundance is not entitled to

judgment as a matter of law on this claim.

### III.    False Advertising

Sunlight alleged that Sundance and Brighton falsely advertised Sunlight products on the Hall/Thomas website. The jury found in favor of Sunlight and awarded $1.00 actual damages against Sundance.[5] Sundance argues that it is entitled to judgment as a matter of law because Sunlight has not shown actual damages under the Lanham Act.  To establish a claim for false advertising under the Lanham Act, plaintiff must show that defendant made material false or misleading representations of fact about a product which (1) were likely to cause confusion about the origin, approval or sponsorship of the product, or (2) falsely represented the characteristics of the goods or services.  Plaintiff must also prove injury by the false representations.  See Sally Beauty Co., Inc. v. Beautyco, Inc., 304 F.3d 964, 980 (10th Cir. 2002); Larkin Group, Inc. v. Aquatic Design Consultants, Inc., 323 F. Supp.2d 1121 (D. Kan. 2004).

Sundance contends that Sunlight did not produce direct evidence of damages, i.e. direct diversion of sales or a lessening of goodwill, and that the Court in fact precluded evidence of goodwill.  On this point, however, Sundance misstates the Court's ruling.  As a discovery sanction, the Court ruled that Sunlight could not produce evidence as to specific monetary amounts of damages for lost profits, goodwill or reputation.  The Court did permit general evidence that Sunlight had sustained damages in those categories.  As previously discussed, the Court cannot find that the evidence on this issue points but one way and is susceptible to no reasonable inferences supporting Sunlight.  The Court therefore overrules Sundance's motion for judgment as a matter of law on this issue.

### IV.    Cybersquatting

---

[5]    As previously noted, the jury exonerated Brighton of liability on this claim.

Sunlight alleged that Sundance and Brighton "cybersquatted" – that they used its trade name and mark in the domain name "sunlightsaunas-exposed.com" in violation of 15 U.S.C. § 1125(d). The jury exonerated both defendants from liability on this claim. Defendants' motion as to the cybersquatting claims is therefore moot.

## V.    Punitive Damages

Sundance argues that on the defamation claim, Sunlight produced no evidence of substantial actual damages and that its claim for punitive damages should therefore be dismissed as a matter of law. For reasons previously stated, the Court disagrees that Sunlight produced no evidence of substantial actual damages. As the Supreme Court noted in Gertz, to set forth evidence of actual damages, "there need be no evidence which assigns an actual dollar value to the injury." 418 U.S. at 350. The Court concludes that the evidence supports the jury's finding that plaintiff was damaged. Defendant's motion is therefore denied.

**IT IS THEREFORE ORDERED** that defendants' Motion For Judgment As A Matter Of Law (Doc. #315) be and hereby is **OVERRULED.** The motion is moot as to all claims against Brighton because the jury found that it was not liable to Sunlight. The motion is also moot as to the cybersquatting claim against Sundance. Sundance's remaining arguments are overruled.

Dated this 25th day of July, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
Kathryn H. Vratil  
United States District Judge

15