## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SUNLIGHT SAUNAS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 04-2597-KHV |
| SUNDANCE SAUNA, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### MEMORANDUM AND ORDER

Sunlight Saunas, Inc. filed suit against Sundance Sauna, Inc. for defamation, false advertising, false description and cybersquatting. Defendant filed a counterclaim for false advertising. As to plaintiff's claims, on May 2, 2006, the jury found that defendant (1) was liable for $2,500 actual damages and $150,000 punitive damages for defamation under Kansas law; (2) was liable for $1.00 actual damages for false advertising and $1.00 actual damages for false description under the Lanham Act, 15 U.S.C. § 1051 et seq.; and (3) was not liable for cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). As to defendant's counterclaim, the jury found that plaintiff was liable for $1.00 actual damages for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). See Jury Verdict (Doc. #324). At the close of plaintiff's evidence and again at the close of all evidence, defendant moved for judgment as a matter of law on plaintiff's claims against it. See Motion For Judgment As A Matter Of Law (Doc. #315) filed May 1, 2006. The Court overruled the motion. Memorandum and Order (Doc. #331) filed July 25, 2006. This matter comes before the Court on the Renewed Motion For Judgment As A Matter Of Law And/Or Rule 59 Motion For New Trial Or To Amend Judgment (Doc.

#333) filed August 2, 2006. For reasons stated below, the Court overrules the motion for judgment as a matter of law and/or a new trial but sustains the motion to amend the punitive damages award.

## Factual Background

The factual background of this case, along with the evidence produced at trial, is well summarized in the Court's Memorandum And Order (Doc. #292) filed April 17, 2006, at 3-27, and the Court's Memorandum And Order (Doc. #331) filed July 25, 2006, at 2-6, and is not repeated here.

## Analysis

Defendant seeks judgment as a matter of law on plaintiff's defamation claim under Rule 50, Fed. R. Civ. P. In the alternative, defendant seeks a new trial and/or alteration or amendment of the judgment as to punitive damages under Rule 59, Fed. R. Civ. P.

### I.   Judgment As A Matter Of Law

Defendant argues that it is entitled to judgment as a matter of law because plaintiff did not produce competent evidence regarding damage to its reputation. Specifically, defendant argues that the testimony of Connie Zack with regard to customer questions is inadmissible hearsay and cannot sustain the defamation verdict.

Defendant cites no authority for the proposition that Zack's testimony regarding customer questions is hearsay. Under the Federal Rules of Evidence, hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A statement is (1) an oral or written assertion or (2) nonverbal conduct of a person, if intended by the person as an assertion. Id. 801(a). An out-of-court question may be an assertion, and therefore hearsay, if the declarant intends the question to function as an assertion. United

States v. Summers, 414 F.3d 1287, 1300 (10th Cir. 2005). The burden rests with the party challenging admission of the question to demonstrate the declarant's requisite intent. Id. Here, defendant does not claim that any customers intended their questions as assertions. Because the questions were of a nature "designed to elicit information and a response," they do not qualify as assertions. Id.; accord United States v. Long, 905 F.2d 1572, 1580 (D.C. Cir. 1990). Thus, Zack's testimony regarding customer questions was not hearsay and may properly support the defamation verdict.[1]

Defendant also asserts that plaintiff's counsel conceded the absence of actual damage in his closing argument. In fact, counsel made no such concession. Counsel commented only that the Court had previously excluded plaintiff's "damage amounts [] put forth in discovery."

A court should be cautious and sparing in granting judgment as a matter of law under Rule 50(b), Fed. R. Civ. P. Zuchel v. City & County of Denver, 997 F.2d 730, 734 (10th Cir. 1993). A party is entitled to judgment as a matter of law if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. Johnson v. Unified Gov't of Wyandotte County/Kan. City, Kan., 371 F.3d 723, 728 (10th Cir. 2004). If the record does not include a legally sufficient evidentiary basis for a claim under the controlling law, judgment as a matter of law is proper. Brown v. Gray, 227 F.3d 1278, 1285 (10th Cir. 2000); Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir. 1997). The Court may not weigh the evidence, consider witness credibility or substitute

---

[1] Even without Zack's testimony regarding customer questions, the record contains a legally sufficient evidentiary basis for the defamation verdict. Specifically, plaintiff produced evidence that at least three customers cancelled sauna purchase contracts because of the website. Plaintiff also produced evidence that sales, sales leads and distributor applications went down, while cancellations increased, after the website went live.

its judgment for that of the jury. Affiliated FM Ins. Co. v. Neosho Constr. Co., 192 F.R.D. 662, 666 (D. Kan. 2000). Based on the record, ample evidence supports the jury verdict on plaintiff's defamation claim. Defendant's renewed motion for judgment as a matter of law is overruled.

## II.    New Trial Or Alteration Or Amendment Of The Judgment

Defendant alternatively seeks a new trial, an amended judgment and/or remittitur of the punitive damage award under Rule 59(a) and (e), Fed. R. Civ. P. Defendant specifically seeks a reduction in the punitive damage award, arguing that it is grossly excessive and represents arbitrary punishment in violation of the due process clause of the Fifth Amendment.[2] Defendant also invokes common law objections to the punitive damages award.

Defendant apparently seeks a new trial on the ground that the defamation award is unsupported by the evidence. The decision to grant a motion for new trial is committed to the trial court's sound discretion. See Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1194 (10th Cir. 1997). The party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence. White v. Conoco, Inc., 710 F.2d 1442, 1443 (10th Cir. 1983). The Court should ignore errors that did not affect the essential fairness of the trial. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984) (quotations and citations omitted). Where a new trial motion asserts that the jury verdict is not supported by the evidence, the

---

[2]    Defendant purports to challenge the award under the due process clause of the Fourteenth Amendment, which does not apply to federal court. The due process principles which apply to punitive damage awards under the Fifth and Fourteenth Amendments, however, are not appreciably different. See Patterson v. Balsamico, 440 F.3d 104, 120 n.10 (2d Cir. 2006); see also Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir. 1993). The Court will therefore treat defendant's argument as one arising under the Fifth Amendment.

-4-

verdict must stand unless it is clearly, decidedly or overwhelmingly against the weight of the evidence. Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir. 1999) (quotation omitted); see May v. Interstate Moving & Storage Co., 739 F.2d 521, 525 (10th Cir. 1984). As explained above, however, the record contains substantial evidence to support the defamation verdict. The Court cannot find the verdict clearly, decidedly or overwhelmingly against the weight of the evidence. The motion for new trial as to the defamation verdict is therefore overruled. The Court turns its attention, then, to the amount of the defamation award and defendant's arguments for reducing it.

As noted, the jury awarded plaintiff $2,500 in actual damages and $150,000 in punitive damages for defamation. Defendant makes two challenges to the amount of the punitive damage award: (1) under Kansas common law $2,500 in actual damages is not sufficiently substantial to justify any award of punitive damages; and (2) $150,000 in punitive damages is grossly excessive and therefore violates the due process clause of the Fifth Amendment.

### A.     Kansas Common Law

Defendant argues that the punitive damage award violates Kansas common law because it rests on an award of $2,500, which constitutes nominal rather than substantial actual damages. Under Kansas common law, a verdict of actual damages is essential to a recovery of punitive damages. Lindquist v. Ayerst Labs., Inc., 227 Kan. 308, 316, 607 P.2d 1339, 1347 (1980). In other words, punitive damages may not be recovered unless plaintiff has suffered substantial actual damages. Shore v. Shore, 111 Kan. 101, 101, 205 P. 1027, 1028 (Kan. 1922). Nominal damages will not sustain a verdict for punitive damages. Id.

The distinction between "substantial" and "nominal" damages depends on a qualitative, rather than

a quantitative, assessment.[3] The amount of the award is only an indicator of the quality of the award and does not by itself define the award as either substantial or nominal. In this context, a substantial damage award is an award of substance which compensates plaintiff for something more than the "mere technical violation of a right . . . where no actual injury is shown." Meinhart v. Farmers' State Bank, 124 Kan. 333, 259 P. 698, 701 (1927).

Defendant argues that the award of $2,500 is nominal. Damage to reputation, however, is one of the "more customary types of actual harm inflicted by defamatory falsehood." Moran v. Kansas, 267 Kan. 583, 599, 985 P.2d 127, 138 (1999). Although plaintiff concededly had problems in proving the extent of that damage, the jury obviously intended to compensate plaintiff for more than the technical violation of a legal right. While Sundance argues that $1,500 has been considered nominal damage in another defamation case, citing Rosen v. Reed, 351 So.2d 1284 (La. Ct. App. 1977), Rosen is not analogous. In Rosen, plaintiff provided no evidence of financial loss or damage to reputation. Id. at 1286. Here, the record contains sufficient evidence to support an award of substantial actual damages. Furthermore, the Court does not believe that Kansas courts would hold that as a matter of law, an actual damage award of $1,500 is insufficient to support an award of punitive damages in some amount. Defendant's common law objection to the punitive damage award is therefore without merit.

### B.   Due Process

---

[3]   Long ago, the Kansas Supreme Court stated that "[i]t is clear that where the injury for which the action is brought is merely nominal, as an award of $1 would indicate, exemplary damages cannot be allowed. . . . If no real or substantial damages are suffered, no exemplary damages can be recovered." Sondegard v. Martin, 83 Kan. 275, 275, 111 P. 442, 442 (1910) (emphasis added) (citing Schippel v. Norton, 38 Kan. 567, 16 P. 804 (1888)). The terms "real" and "substantial" are synonymous in this context and both terms are distinguished from "nominal" damages.

Defendant also argues that the punitive damage award is grossly excessive and violates its rights under the due process clause of the Fifth Amendment. In determining the constitutionality of such award, the Court must consider (1) the degree of reprehensibility of defendant's conduct; (2) the disparity between the harm or potential harm suffered by plaintiff and the punitive damage award; and (3) the difference between this remedy and the civil or criminal penalties authorized or imposed in comparable cases. See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996); see also Continental Trend Res., Inc. v. OXY USA Inc., 101 F.3d 634 (10th Cir. 1996).

### i.       Degree Of Reprehensibility

The degree of reprehensibility is perhaps the most important indicium of the reasonableness of a punitive damages award. Gore, 517 U.S. at 576. In considering reprehensibility, proper factors include whether "[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003). The absence of all such factors "renders any award suspect." Id. The existence of even one factor may justify punitive damages, however, where defendant's conduct is "so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Id.

The first factor, which considers the nature of the injury, favors some award of punitive damages. Injury to reputation is obviously not a physical injury, but it is sufficiently personal to remove it from the realm of purely economic injury. See, e.g., Hall v. Kan. Farm Bureau, 274 Kan. 263, 276, 50 P.3d 495,

504 (2002) (actual injury in defamation claim not limited to out-of-pocket-loss; harm inflicted by defamatory speech includes impairment of reputation, personal humiliation and mental anguish). This is true even when plaintiff is a business entity. See Meyer Land & Cattle Co. v. Lincoln County Conservation Dist., 29 Kan. App. 2d 746, 753, 31 P.3d 970, 976 (2001) (damage to business reputation is sort of general public stigma defamation is meant to address). Although damage to reputation falls somewhere between physical and economic harm, the nature of the injury suggests that it is more closely related to physical harm than to economic harm. Thus, the harm in this case supports the punitive damage award.

The second factor does not necessarily support a punitive damage award. The tortious conduct in this case does not evince an indifference to or a reckless disregard of the health or safety of others.

The third factor of reprehensibility considers plaintiff's financial vulnerability. Here, plaintiff is not in a position of financial weakness relative to defendant. The Supreme Court has recognized that certain parties are more vulnerable to defamation than others. See Wolston v. Reader's Digest Ass'n, 443 U.S. 157, 164 (1979) (public figures require less protection from defamation than private individuals); see also Sellars v. Stauffer Commc'ns, Inc., 9 Kan. App. 2d 573, 576-77, 684 P.2d 450, 454 (1984) (parties which have voluntarily exposed themselves to public spotlight and which have greater access to channels of communication capable of exposing defamation are less vulnerable to defamation than private individuals). As a place of public business, plaintiff is more akin to a public figure than a private individual. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974) (public figures include those who seek public attention with vigor and success). Plaintiff voluntarily engages in a business conducted primarily though the internet, which places it in the public arena. In addition, plaintiff's voluntary false advertising exposed it to the risk of a defamatory backlash. Moreover, plaintiff is able to respond to defendant's defamatory

statements through channels of communication which are capable of exposing such defamation. Because plaintiff is not financially vulnerable, the third factor does not favor punitive damages.

With regard to the fourth factor, i.e. whether the conduct involved repeated actions or was an isolated incident, plaintiff argues that defendant committed repeated transgressions with "approximately twenty versions of the disparaging website," and that defendant registered additional domain names and recruited additional companies to join its attack against plaintiff. While the record does not suggest that defendant generally conducted business in a reprehensible manner, see Continental Trend, 101 F.3d at 639, or continued to engage in wrongful conduct after plaintiff filed suit, the record strongly evidences a malicious and deceitful campaign to injure or destroy plaintiff's business. Defendant's conduct involved much more than a single instance of misconduct, and it accordingly suggests a higher level of reprehensibility. See Gore, 517 U.S. at 578. Thus, the fourth factor supports a large punitive damage award.

Under the fifth factor, it is clear that the harm in this case was not the result of mere accident. The record contains compelling evidence that in building and operating its website and making defamatory statements therein, defendant acted with intentional malice toward plaintiff. The record contains evidence that defendant's website made the following untrue statements: (a) Sunlight lies; (b) Sunlight lied when it stated that its saunas had true ceramic heaters; (c) Sunlight lied when it stated that its saunas had veneer free construction; (d) Sunlight Saunas would have you believe that each of their saunas were 100% veneer free; (e) Sunlight lied about safety warnings on its products; (f) Sunlight had no safety warnings and no safety compliance; (g) Sunlight lied about having a lifetime warranty on its saunas; (h) Sunlight Saunas would have you believe they are the manufacturer; (i) Sunlight lied about whether it was the manufacturer; (j) Sunlight lied about offering exclusives; (k) Claiming to be unique. . . . Sunlight Saunas doesn't even

manufacture their own saunas; and (l) Other companies offer the same products without the fraudulent claims. This factor weighs heavily in favor of a large punitive damage award.

Taken as a whole, the factors reveal a level of reprehensibility which clearly supports some award of punitive damages. The Court does not believe that an award of $150,000 is warranted, however, and finds that a more modest amount will be sufficient to achieve punishment and deterrence. See id. at 580 (evaluation of punitive damage award not take-it-or-leave-it proposition; court may reduce award based on defendant's degree of reprehensibility).

### ii. Ratio

Perhaps the most commonly cited indicium of an unreasonable or excessive punitive damage award is the ratio of punitive to actual damages. Id. In practice few awards which exceed a single-digit ratio of punitive to actual damages will satisfy due process, Campbell, 538 U.S. at 425, but the ratio should be calculated to include potential damages "that would have ensued if the tortious plan had succeeded." Gore, 517 U.S. at 581. Courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to plaintiff and the general damages recovered. Campbell, 538 U.S. at 426.

Here, the ratio of punitive to compensatory damages is 60 to one. In justification of this ratio, plaintiff argues that (1) injury for defamation is hard to detect and difficult to determine, and (2) its potential loss makes the ratio much less than 60 to one.

In support of its first argument, that the injury is hard to detect and that the harm is difficult to determine, Sunlight cites the following language from Gore:

Low awards of compensatory damages may properly support a higher ratio than high

> compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach.

517 U.S. at 582. Plaintiff is correct that the monetary value of harm to reputation is difficult to determine. While it is clear that plaintiff suffered tangible injury in the form of lost sales, it also suffered damage to reputation, an intangible harm which transcends out-of-pocket loss. See Hall, 274 Kan. at 276, 50 P.3d at 504. This fact alone makes the monetary value of plaintiff's harm difficult to determine. The measure of harm is further obscured because defendant used the internet to defame plaintiff and plaintiff could not ascertain the full impact of the publication, i.e. the scope of the audience or how the audience reacted to the defamatory statements.

Plaintiff's second argument is that the ratio is appropriate in light of the potential damage which it could have suffered if defendant had succeeded in its plan to destroy plaintiff. For this argument, plaintiff relies on TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443 (1993), where the Supreme Court approved a ratio of 526 to one, in part because of the potential damage which defendant's actions could have caused. TXO instructs that potential consequence should be evaluated as if defendant had succeeded in its plan. Id. at 460 (appropriate to consider magnitude of potential harm to intended victim if wrongful plan had succeeded). Here, the record indicates that defendant sought to destroy plaintiff through publication of its website containing defamatory statements. The question, then, is what harm would likely have resulted if defendant had succeeded in its plan. See Gore, 517 U.S. at 581. Plaintiff asserts that its potential loss would include millions of dollars if defendant had succeeded. The record contains no evidence from which the Court can corroborate this assertion, but plaintiff's relative success and continued

growth suggest that if defendant had succeeded in destroying plaintiff, the ratio of punitive to actual damages would be significantly smaller.

Taken together, the intangible nature of the harm to plaintiff's reputation and the potential harm from defendant's actions suggest that a ratio of punitive to actual damages above single digits is appropriate.

### iii. Sanctions For Comparable Misconduct

Comparing the punitive damage award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness. Gore, 517 U.S. at 583. This guidepost ensures that defendant has "sufficient notice . . . of the potential for large punitive awards." Continental Trend, 101 F.3d at 641. Punitive damages should not be greater than what is "necessary to deter future misconduct," and the Court should consider less drastic measures if available. Gore, 517 U.S. at 583.

Under Kansas law, criminal defamation is a class A nonperson misdemeanor punishable by a fine up to $2,500 but no imprisonment.[4] See K.S.A. §§ 21-4004(c), 21-4503a(b)(1). While Kansas law is clear that punitive damages may be awarded in defamation cases which involve actual malice, see Gobin v. Globe Publ'g Co., 232 Kan. 1, 2-3, 649 P.2d 1239, 1240-41 (1982), the Court finds no civil case in which a Kansas jury has awarded punitive damages for defamation. Cases from other jurisdictions, however, reveal the potential for large punitive awards. See, e.g., Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1329 n.4, 1336 (10th Cir. 1996) (affirming award of $75,000 punitive damages

---

[4] A criminal statute is helpful in determining the seriousness of the offense under state law; when used to determine the appropriate amount of an award, however, "the criminal penalty has less utility." Campbell, 538 U.S. at 428.

-12-

and $30,000 actual damages on defamation and antitrust claims); Central Bering Sea Fisherman's Assoc. v. Anderson, 54 P.3d 271, 279-80 (Alaska 2002) (affirming punitive damage award of $400,000 with actual damages of $35,000 on defamation claim); Aken v. Plains Elec. Generation & Transmission Coop., Inc., 49 P.3d 662, 672-73 (N.M. 2002) (entering punitive damage award of $300,000 with actual damages of $100,000 on defamation claim).

Because large punitive damage awards in other jurisdictions provide notice of the potential penalty in this case, the Court finds that the punitive damage award satisfies the third guidepost requiring sufficient notice of comparable penalties. Under Gore, however, the Court must consider less drastic measures if available. The record does not suggest a significant likelihood of continued wrongful conduct by defendant, or that defendant has such wealth that the current punitive damage award will not influence its conduct. The Court is therefore satisfied that a lower amount of punitive damages will effectively deter future misconduct and sufficiently punish defendant's actions

Specifically, the Court finds that a punitive damage award of $50,000 will sufficiently sanction defendant for its reprehensible conduct and satisfy the deterrence objective of punitive damages. The Tenth Circuit, however, instructs that under the Seventh Amendment plaintiff must receive the option of a new trial on damages in lieu of remitting a portion of the jury's award. Sloan v. State Farm Mut. Auto. Ins. Co., 360 F.3d 1220, 1225 (10th Cir. 2004) (citing Hetzel v. Prince William County, 523 U.S. 208, 211 (1998)). Thus, if plaintiff does not consent to the remittitur, the district court has no alternative but to order a new trial on punitive damages. Id. Therefore, the Court orders a remittitur which reduces the punitive damage award from $150,000 to $50,000. Plaintiff may accept such reduction, or receive a new trial on the issue of punitive damages.

**IT IS THEREFORE ORDERED** that defendant's Renewed Motion For Judgment As A Matter Of Law And/Or Rule 59 Motion For New Trial Or To Amend Judgment (Doc. # 333) filed August 2, 2006 be and hereby is **OVERRULED** in part and **SUSTAINED** in part. The Court **OVERRULES** defendant's motions for judgment as a matter of law and new trial. The Court **SUSTAINS** defendant's motion to amend judgment and, provided that plaintiff accepts such reduction, remits the punitive damage award to $50,000. Plaintiff will notify the Court **on or before November 6, 2006** whether it accepts or rejects the remittitur. A new trial on punitive damages is set for January 2, 2007, if plaintiff rejects the remittitur.

Dated this 23rd day of October, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

-14-